895 So.2d 453 (2005)
Paul J. WAGNER, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-756.
District Court of Appeal of Florida, Fifth District.
February 4, 2005.
Rehearing Denied March 18, 2005.
*454 James S. Purdy, Public Defender, and Meghan Ann Collins, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Pamela J. Koller, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, C.J.
Paul Wagner appeals the judgments and sentences imposed after he entered an open plea of nolo contendere to the crimes of escape, resisting an officer with violence, and reckless driving. The specific issue we address is whether the trial court erred in denying Wagner's motion to withdraw his plea when the motion was based on the assertion that because the approximation of the minimum sentence at the time the plea was entered was inaccurate, Wagner was prejudiced in seeking a downward departure sentence.[1] Based on the *455 particular facts and circumstances of the instant case, we conclude that the trial court did not err in denying Wagner's motion.
Wagner rejected a plea offer from the State and chose to proceed to trial. The trial commenced and the jury was selected and sworn. It was at this time that Wagner chose to enter an open plea of nolo contendere to the court. The trial court engaged in an extensive plea colloquy with Wagner that complied with all of the requirements of rule 3.172(c), Florida Rules of Criminal Procedure. Specifically, Wagner was placed under oath, was advised of the rights that he waived by entering the plea, and was fully advised as to each specific factor listed in rule 3.172(c), including the maximum sentences that could be imposed by law. Wagner testified that he understood all of the rights he waived, the nature of the charges, and the maximum sentences for each of the crimes to which he pled. In addition, the trial court clearly explained to Wagner that the court could impose any sentence up to the previously specified maximum sentences for each charge and that there was no plea agreement that bound the court to any specific sentence. Wagner also testified that he understood this admonition.
Although the trial judge did state what he thought the minimum sentence might be at the time the plea was entered based on preliminary calculations, Wagner was advised that a scoresheet would have to be completed before a final minimum sentence could be calculated and that the minimum sentence could change. Sentencing was set for a later date.[2] It was at sentencing that Wagner moved to withdraw his plea, claiming that the scoresheet calculations based on his criminal history, described by the trial court as "pretty lengthy," indicated a minimum sentence higher than previously discussed at the time he entered his plea. Specifically, Wagner complained that it was his intention to seek a downward departure sentence and that because the minimum scoresheet calculation was higher than was originally estimated by the trial court, he was misled into thinking that he would receive a downward departure sentence. After a hearing, the trial court denied Wagner's motion to withdraw his plea.
The circumstances under which a defendant may withdraw a plea are governed by Florida Rule of Criminal Procedure 3.170, which provides that a "court may in its discretion, and shall on good cause, at any time before a sentence, permit a plea of guilty to be withdrawn." Fla. R.Crim. P. 3.170(f).[3] Here, because Wagner *456 moved to withdraw his plea prior to sentencing, it was Wagner's burden to establish good cause to set aside the plea under the rule. See Gunn v. State, 841 So.2d 629 (Fla. 2d DCA 2003); Brown v. State, 428 So.2d 369 (Fla. 5th DCA 1983); Adler v. State, 382 So.2d 1298 (Fla. 3d DCA 1980). "Good cause has been found to exist where the defendant demonstrates `that his previously tendered guilty plea was infected by misapprehension, undue persuasion, ignorance, or was entered by one not competent to know its consequence or that it was otherwise involuntary, or that the ends of justice would be served by withdrawal of such plea.'" Davis v. State, 783 So.2d 288, 289 (Fla. 5th DCA 2001) (quoting Onnestad v. State, 404 So.2d 403, 405 (Fla. 5th DCA 1981)). Good cause must be established within the context of the record. See Collins v. State, 858 So.2d 1197 (Fla. 4th DCA 2003). Moreover, "[i]n order to show cause why the plea should be withdrawn, mere allegations are not enough; the defense must offer proof that the plea was not voluntarily and intelligently entered." Robinson v. State, 761 So.2d 269, 274 (Fla.1999), cert. denied, 529 U.S. 1057, 120 S.Ct. 1563, 146 L.Ed.2d 466 (2000) (citations omitted).
The trial courts are bestowed with the discretion to determine whether good cause has been established or to grant a plea withdrawal in the absence of good cause.[4] The courts of this state have found this discretion in determining whether to grant or deny a motion to withdraw a plea to be rather broad.[5] "A trial court abuses its discretion `only where no reasonable man would take the view adopted by the trial court.'" Sims v. State, 869 So.2d 45, 47 (Fla. 5th DCA 2004) (quoting Nolte v. State, 726 So.2d 307, 309 (Fla. 2d DCA 1998)). On appeal, the defendant has the burden of showing that the trial court abused its broad discretion in denying the motion to withdraw the plea and unless that burden is met, the trial court's ruling must be affirmed.[6]
Turning to the issue whether the trial court abused its discretion in finding that Wagner failed to establish good cause to set aside his plea, the transcript of the plea colloquy belies the argument made by Wagner that he was misadvised that he *457 would receive a below-guidelines sentence. The trial court specifically advised Wagner before his plea was accepted that:
The Court: And your attorney did at side bar indicate at this point he doesn't feel there are any legal grounds for me to depart downward. You understand all that?
The Defendant: Yes, sir.
At this point Wagner and his attorney, Mr. Hartley, conferred and the following discussion took place:
Mr. Hartley: Okay. What I've explained to my client is that downward departure issue, if indeed there are legal issues of downward departure, is completely the Court's discretion.
The Court: Do you understand  now that your attorney has talked to you, do you understand that?
The Defendant: Yes, sir.
Thus, not only did Wagner testify under oath that he understood that he could receive a sentence up to the statutory maximum, he was also advised that his attorney knew of no legal grounds to depart downward from the guidelines. The courts have clearly established that unless proper and sufficient grounds are presented, the trial court may not impose a downward departure sentence. State v. Stanard, 859 So.2d 572 (Fla. 5th DCA 2003). Wagner was further advised that even if such grounds did exist, the trial court had discretion whether to impose a downward departure sentence. We reject Wagner's argument that failure to accurately advise him of the minimum sentence prejudiced his intended request for a downward departure sentence when he was advised that there were no grounds for departure and that even if there were, the matter was purely discretionary with the trial court.
Moreover, Wagner entered an open plea to the court. An open plea is not made pursuant to a plea agreement with the state, and the defendant is given no assurance of what sentence he will receive when sentenced. See Brown v. State, 585 So.2d 350 (Fla. 4th DCA 1991). When a defendant enters an open plea, he or she indicates "a willingness to accept anything up to and including the maximum possible sentence." Simmons v. State, 611 So.2d 1250, 1253 (Fla. 2d DCA 1992). During the plea colloquy, Wagner was advised by the trial court that he could receive any sentence up to the maximum sentence allowed by law, and he was advised what the maximum sentences were for each offense to which he pled.
We believe the decision in Vitiello v. State, 609 So.2d 111 (Fla. 4th DCA 1992), is analogous to the instant case and very instructive. In Vitiello, the defendant sought reversal of his conviction and sentence imposed after he pled guilty on the grounds that the plea was not entered voluntarily or with an understanding of the consequences. Specifically, he argued that the recommended and permitted ranges calculated by the prosecutor at the time the plea was entered were lower than the ranges reflected on the scoresheet prepared for sentencing. In rejecting that argument, the court stated:
At the plea conference appellant entered what his counsel described as an "open" guilty plea, that is, there was no agreement as to a definitive sentence for any of the offenses, other than that the sentences would be within either the recommended or permitted range of the sentencing guidelines, as reflected on the scoresheet to be computed after the court had been furnished a presentence investigation. The prosecutor expressed the belief that the guidelines, when computed, would show 12 to 17 years as the recommended range and 9 to 22 years as the permitted range. However, in response to the court's inquiry, appellant *458 acknowledged his understanding that the plea as entered would allow the court to sentence within either the recommended or permitted guideline ranges, even if those ranges were higher than what the prosecutor believed they would be. The record clearly refutes appellant's claim that his guilty plea was entered without an understanding of the consequences.
Id. at 111-12. Similarly, in the instant case, the record clearly refutes Wagner's claim that he entered his plea without understanding the consequences.
We note that the trial court was not required to advise Wagner at the time of the plea of the minimum sentence provided by the Criminal Punishment Code scoresheet.[7] Florida Rule of Criminal Procedure 3.172, adopted from Federal Rule of Criminal Procedure 11(c),[8] governs the taking of pleas in criminal cases. See Koenig v. State, 597 So.2d 256 (Fla.1992). When accepting a plea, rule 3.172(c)(1), Florida Rules of Criminal Procedure, requires that the trial court determine that the defendant understands "the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law." Rule 11(c) has identical requirements. Neither rule requires a defendant be advised of the minimum sentence. Because rule 3.172 was adopted from federal rule 11(c), it is helpful to turn to federal decisions that explain why advisement of the minimum sentence has never been a requirement of the rule.[9]
The federal courts reason that it is not necessary to advise a defendant of either the minimum or maximum guidelines sentence because at the time many defendants enter their pleas, the prosecutors and the trial courts usually do not have sufficient information available to them to make an accurate calculation. United States v. Andrades, 169 F.3d 131 (2d Cir.1999); United States v. DeFusco, 930 F.2d 413 (5th Cir.1991) (en banc); United States v. Rhodes, 913 F.2d 839, 843-44 (10th Cir.1990), cert. denied, 498 U.S. 1122, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991); United States v. Jones, 905 F.2d 867 (5th Cir.1990); see *459 also United States v. DeJesus-Abad, 263 F.3d 5 (2d Cir.2001). That is why presentence investigation reports are generally ordered after a plea is entered so the information may be available at sentencing to make the proper calculations. Rhodes; Jones; accord Vitiello. Therefore, all that is required is that the defendant be advised of the maximum penalty or of any minimum mandatory sentence. DeFusco; Rhodes; Jones. In the instant case, at the time Wagner unexpectedly entered his plea, the trial court did not have a presentence investigation report or complete information about Wagner's criminal history in order to make an accurate calculation of the minimum sentence. That is why the trial court ordered a presentence investigation report, set sentencing for a later date, and advised Wagner that the calculation could change when all the information was gathered. Moreover, Wagner voluntarily entered his plea knowing full well all of the consequences associated with that act, including the fact that he could receive any sentence up to the statutory maximum for each charge.
We note that in two hearings subsequent to his sentencing hearing, Wagner was given the opportunity to establish grounds for a downward departure sentence. Before ruling on and ultimately denying Wagner's motion for downward departure, the trial court heard the testimony of numerous witnesses and arguments of counsel. Part of the argument presented by Wagner's attorney, with which we agree, was as follows:
I'm not sure once the transcript is printed out that it is going to sustain his position that he should be allowed to withdraw his plea because from what the court reporter read to me, you indicated on the record that it could be anywhere from probation to 15 years in prison on the escape charge itself. It doesn't appear that there was a definite range or a definite amount on months that you were promising him.
Within the context of this record, we believe that Wagner's plea was not infected with ignorance, misapprehension, or undue persuasion and there is certainly nothing to indicate that Wagner was incompetent at the time he entered his plea or that the ends of justice require that his motion be granted. Moreover, we cannot come to the conclusion that no reasonable person would take the view adopted by the trial court. Wagner's attorney even accepted the trial court's decision. Accordingly, we conclude that the trial court was correct and did not abuse its discretion: 1) in finding that good cause did not exist; and 2) in denying Wagner's motion absent a showing of good cause. Because Wagner has not met his burden to establish that the trial court abused its discretion, this court affirms the order denying the motion to withdraw Wagner's plea.
In closing, we want to make it clear that we are not saying that misadvising a defendant of the minimum sentence never constitutes good cause to set aside a plea or may never form the basis to allow withdrawal of the plea absent a showing of good cause. Certainly, circumstances may arise where that would be appropriate. We simply hold that the facts and circumstances of the instant case do not present such a situation.
AFFIRMED.
PLEUS, J., concurs.
PALMER, J., dissents, with opinion.
PALMER, J., dissenting.
I respectfully dissent from the opinion of the majority because, in my opinion, the record demonstrates that the trial court reversibly erred by denying the defendant's request to withdraw his plea before *460 sentencing. More specifically, I disagree with the majority's conclusion that the issue presented here is whether the defendant demonstrated that he was prejudiced in seeking a downward departure sentence as a result of the fact that the approximation of the minimum sentence was inaccurate at the time the plea was entered. Rather, I conclude the issue before this court is whether a defendant, prior to sentencing, should be permitted to withdraw his plea when the record demonstrates that both the trial court and defense counsel had mistakenly advised the defendant that his minimum possible guideline sentence was significantly lower than his actual minimum guideline sentence.
The record reveals that the State charged the defendant with committing the crimes of escape, resisting an officer with violence, reckless driving, and felony driving while license canceled, suspended or revoked. The matter proceeded to trial; however, after the jury was selected, the defendant entered into a plea agreement with the State. Pursuant to the parties' agreement, the defendant entered an open plea of nolo contendere to the charges of escape, resisting an officer with violence, and reckless driving. Before entering his plea, the defendant was advised, both by the trial court and by counsel, that the court file indicated that the sentencing guidelines would mandate a minimum sentence of approximately 26 months imprisonment, with a sentencing cap of 15 years. The trial court accepted the defendant's plea and then deferred sentencing.
Thereafter, at the start of the sentencing hearing, the defendant filed a motion to withdraw his plea, citing as the basis for relief the fact that his plea was entered in reliance on previous misadvice regarding the potential sentencing range in that the bottom end of the sentencing guidelines range was, in fact, 40 months' imprisonment. The motion specifically alleged that the defendant would not have entered into the plea agreement had he known the correct sentencing guidelines range. During the hearing, defense counsel advised the court as to the basis of the defendant's motion to withdraw:
As to the motion to withdraw the plea, when you know, when this Court looks at what transpired, it's important to keep in mind that you know, granted, there was an open plea agreement. It was a plea to the court on the morning of the actual trial. The basis for or my client's understanding at the time that he entered into that plea, is that it was at the bottom end of the guidelines. Of course, there were no promises on what he's going to get under that, but the bottom line is a pretty good indicator what the range is and what the permissible you know, you can't go below this. This is what the best case scenario is. Plus we had discussed that my client intends to argue for a downward departure based on the factual circumstances behind the arrest. You know, the State Attorney comes in on the next time we came here for sentencing and that bottom end of the guidelines is nearly doubled. That is certainly good cause for withdrawal of the plea. That changes the landscape. I'm not talking about a couple of months here, we're talking about nearly double the bottom end. Granted, there was not any guarantees but at the time that he entered the plea, he entered it with the understanding that that was the lowest permissible and there may be some leeway based on a downward departure. Best case scenario now, that even if this Court agreed factually that there's legal grounds for a downward departure, he's still in worse shape than he ever would have been. And it's his position that he never would have entered into the plea had he been *461 aware that there was in excess 40 months of incarceration. He intimated that to me on the phone. He told me that same thing that day. He said, God, I can't believe it's 40 months. And that's when I told him, you've got to take the PSI home, make sure that these things on here are correct. The few conversations we've had since then, he has said to me consistently, I would not have entered this plea, . . . if I had known the bottom end of the guideline was 40 months. I don't want to do 40 months in jail. I would have just as soon gone to trial.
[W]hen we had talked about doing the plea in the first place on the bottom line do these priors look right to you. And [the defendant] said, yeah, I guess, they're right. And, you know, at that level when we're at 18 to 20 months, we were right in that range, that's when he said to me, well, I want to take the plea and then we can argue for a downward departure.
The trial court summarily denied the defendant's motion and proceeded to sentencing.
On appeal, the defendant challenges the trial court's ruling, arguing in his brief that his motion to withdraw should have been granted because he established good cause by demonstrating that the plea was entered under the mistaken belief that the lowest permissible sentence was 26.1 months when in actuality the bottom of the guidelines was 38.75 months. The brief reads:
In the instant case, Appellant was aware that he was not guaranteed a specific sentence. He also knew that he may not receive a downward departure. But knowing the correct sentencing range, being informed of his options, would have allowed Appellant to make a knowledgeable decision regarding whether or not to go to trial. Appellant made his decision based on a misunderstanding and even though the State's mistake was unintentional, it still negated the voluntariness of Appellant's plea.
In my view, under these facts, the decision in Tobey v. State, 458 So.2d 90 (Fla. 2d DCA 1984), is directly on point.
In Tobey, the defendant entered an open guilty plea with the understanding that his presumptive sentence under the guidelines would be three years. Such understanding resulted from the fact that the assistant state attorney had represented to defense counsel that the defendant's presumptive sentence under the guidelines would be 36 months imprisonment and defense counsel related same to the defendant. However, when the defendant's scoresheet was later calculated, the sentencing range turned out to be five and one half to seven years. Prior to sentencing, the defendant moved to withdraw his plea, arguing that his plea was entered involuntarily because it was based on a mistake of fact regarding his presumptive sentence. The trial court denied the motion, stating that the only agreement which was made with the defendant at the time the plea was entered was that the defendant would be given a guidelines sentence. On appeal, the Second District reversed:
When a defendant moves to withdraw his plea of guilty, the court should be liberal in exercising its discretion to permit the withdrawal, especially where it is shown that the plea was based on a failure of communication or a misunderstanding of the facts.
* * *
In the instant case, there is no suggestion that the court failed to honor the plea bargain. The problem arises from the fact that appellant's pleas were *462 based on a failure of communication or misunderstanding between defense counsel and the assistant state attorney. The appellant should not be penalized for this honest misunderstanding. As in [Banks v. State, 136 So.2d 25 (Fla. 1st DCA 1962),] the ends of justice will best be served by allowing appellant to withdraw his pleas.
458 So.2d at 92 (citations omitted).
As was the case in Tobey, here the record demonstrates that during his plea hearing the defendant was misadvised, both by counsel and the court, concerning the bottom range of the sentencing guidelines. Once the defendant became aware that he had been misadvised regarding the guidelines, he moved to withdraw his plea. On this record, I conclude that the trial court abused its discretion in denying the defendant's motion to withdraw his plea. See also State v. Warner, 762 So.2d 507 (Fla.2000)(explaining that if the judge determines that the sentence to be imposed must exceed the preliminary evaluation, then the defendant who has pleaded guilty or nolo contendere in reliance upon the judge's preliminary sentencing evaluation during plea bargaining has an absolute right to withdraw the plea); Deprycker v. State, 486 So.2d 57 (Fla. 3d DCA 1986)(holding that trial court erred in denying the defendant's motion to withdraw his plea where the defendant pled guilty based on a misapprehension of the possible sentence induced by the State's miscalculation of the appropriate scoring under the guidelines where the error was discovered before sentencing).
With regard to the nature of the misadvice given to the defendant regarding the bottom end of the sentencing guidelines, a review of the transcript reveals that the only statement made in the defendant's presence about a possible change in the guideline sentence was that it might "drop" some:
THE COURT: . . . the anticipated guidelines sentence is what? I realize that might be subject to some change, you know, the presentence investigation.
[PROSECUTOR]: 26.625, but that's going to drop a little bit because that's including one of the misdemeanors with just a few points, so it's approximately 26.5.
I believe the applicable law in this situation is very straightforward: if a defendant is significantly misadvised as to the minimum guidelines sentence, even in an open plea case, he is entitled to withdraw his plea prior to sentencing, absent extraordinary circumstances.
Accordingly, I would vacate the defendant's judgments and sentences, and remand this matter to the trial court with directions to allow the defendant to withdraw his plea because, in my view, the defendant adequately demonstrated that he entered his plea based upon misinformation concerning the minimum recommended guidelines sentence.
NOTES
[1] Wagner also raises the issue that he was sentenced without representation of counsel and that the court failed to conduct an adequate Faretta inquiry. See Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). We disagree. The inquiry was sufficient, and we note that Wagner had counsel at the sentencing hearing and up to the time he was sentenced. At the sentencing hearing Wagner's attorney was allowed to withdraw because Wagner wanted another attorney to represent him. However, the attorney he wanted was not available to represent Wagner at that time. In any event, we conclude that the inquiry conducted by the trial court was sufficient and that Wagner was properly allowed to proceed through the sentencing hearing on his own.
[2] Prior to the date of the hearing on the motion to withdraw and sentence imposition, the trial court attempted to set a sentencing date, which was continued because Wagner needed extra time to determine whether he had grounds to dispute any of his prior convictions. We note, as did the trial court at the hearing on the motion to withdraw, that Wagner never presented any grounds to legitimately dispute his rather extensive criminal record.
[3] The court in State v. Partlow, 840 So.2d 1040 (Fla.2003), held that if the motion to withdraw is made after sentencing, the provisions of rule 3.170(l) govern the trial court's determination. The court explained:

Rule 3.170(l) applies to motions to withdraw filed after sentencing. In contrast to subdivision (f), this provision allows withdrawal of a plea only on the limited grounds listed in Florida Rule of Appellate Procedure 9.140(b). Such grounds include lack of subject matter jurisdiction, violation of the plea agreement, and involuntariness of the plea. Moreover, once sentence has been imposed, to withdraw a plea a defendant must demonstrate a manifest injustice requiring correction. See Lopez v. State, 536 So.2d 226, 229 (Fla.1988). Because Partlow filed his motion after sentencing, subdivision (l), not subdivision (f), of rule 3.170 applies. Therefore, to obtain permission to withdraw his plea, Partlow had to show that failure to inform him of the sexual offender registration requirement rendered his plea involuntary.
Id. at 1042 (footnote omitted).
[4] Elam v. State, 636 So.2d 1312 (Fla.1994) (maintaining that trial court has discretion to determine good cause); Collins v. State, 858 So.2d 1197 (Fla. 4th DCA 2003); Davis v. State, 783 So.2d 288, 289 (Fla. 5th DCA 2001) ("The trial court did not abuse its discretion in concluding that Davis failed to sustain his burden of proving good cause....").
[5] See Partlow, 840 So.2d at 1042 (stating that under rule 3.170(f), "a trial court plainly has broad discretion in determining motions to withdraw a plea.") (citations omitted); Hunt v. State, 613 So.2d 893 (Fla.1992); Davis.
[6] Robinson v. State, 761 So.2d 269 (Fla.1999); Taylor v. State, 852 So.2d 371 (Fla. 5th DCA 2003) ("Unless an abuse of that discretion is shown, the determination not to allow the plea to be withdrawn must be affirmed.") (citing Davis); Davis 783 So.2d at 289 (citing Lopez v. State, 536 So.2d 226, 229 (Fla.1988); Costello v. State, 260 So.2d 198, 200 (Fla.1972)).
[7] In 1998, the Legislature enacted the Criminal Punishment Code, which provides that the maximum prison sentence is never less than the statutory maximum and the minimum sentence is determined by very similar calculations under the prior sentencing guidelines with provisions for a downward departure sentence. See §§ 921.002-.0027, Fla. Stat. (Supp.1998); see also Fla. R.Crim. P. 3.704.
[8] See State v. Coban, 520 So.2d 40 (Fla.1988) (recognizing that Florida Rule of Criminal Procedure 3.172 adopted Federal Rule of Criminal Procedure 11(c)(1)).
[9] See Morales v. Sperry Rand Corp., 601 So.2d 538, 539 (Fla.1992) ("The Florida rule is patterned after Federal Rule of Civil Procedure 4(j). Therefore, the federal decisions under that rule are pertinent."); Marr v. State, 470 So.2d 703, 715-16 (Fla. 1st DCA 1985) ("The law is clear that if a state rule is designed after the language of its federal counterpart, the rule will take the same construction in Florida courts as its prototype has been given, insofar as such construction comports with the spirit and policy of the Florida law relating to the same subject.") (citation omitted); Sheradsky v. Basadre, 452 So.2d 599, 602-03 (Fla. 3d DCA 1984), pet. for review denied sub nom. Commercial Laundries, Inc. v. Basadre, 461 So.2d 113 (Fla.1985). In Sheradsky, the court explained:

Federal case law which construes a federal rule after which a Florida rule is patterned may be considered in interpreting the Florida rule, Pearlman v. Pearlman, 405 So.2d 764, 766 (Fla. 3d DCA 1981), as it must be assumed that in adopting a rule identical to a federal rule, our supreme court intended to achieve the same results that would obtain under the federal rule. Zuberbuhler v. Division of Administration, 344 So.2d 1304, 1306 (Fla. 2d DCA 1977), cert. denied, 358 So.2d 135 (Fla.1978).
452 So.2d at 602-03.